IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|       Plaintiff, ) | |
| ) | |
| v. ) | CRIM. NO. 22-03 |
| ) | |
| SEBASTIAN SOOGRIM, ) | |
|       Defendant. ) | |
| _____ ) | |

**DEFENDANT'S RESPONSE IN SUPPORT OF MOTION TO SUPPRESS**

Sebastian Soogrim, by and through counsel, Lisa L. Brown Williams, Assistant Federal Public Defender, files this reply to the government's supplemental memorandum. [ECF No. 66]

### I. The Crime Stopper Tip Was Stale And Insufficient to Establish Probable Cause

The Crime Stoppers tip that initiated the investigation in this matter was memorialized in a report dated May 21, 2021. TFO President did not receive the tip until January 23, 2022. The government argues that because a marijuana grow operation is an entrenched activity, concerns with regard to the staleness of the tip are negated. However, this argument does not address the reliability of the tipster and the information initially received by TFO President. At the suppression hearing, TFO President admitted that he knew nothing about the person that called in the tip, that he did not speak with any of the officers that initially received the tip, and he did not inquire as to any follow up after the tip was received. Exhibit A, p. 7, 23-24. While admittedly, age alone does not determine staleness, the reliability of the tipster is important and

–1–

relevant information. TFO President had no information regarding the tipster or the reliability of the tipster's information. He had a tip that contained a bare bones allegation of illegality with no basis to evaluate the credibility of the tip's content and no historical interaction with the tipster that supported reliance on the information received. *Illinois v. Gates,* 462 U.S. 213 (1983) distinguished between anonymous tips that contain detailed predictions of a target's future activities from those that merely assert criminal wrongdoing occurring in the past or at the time of the tip. Conclusory anonymous tips do not amount to reasonable suspicion, much less probable cause, and police may not base a seizure or search on them. *United States v. Ritter,* 416 F.3d 256, 273 (3d Cir. 2005).

## II. The Aerial Surveillance By President Violated Mr. Soogrim's Right to Privacy

The government summarily concludes that because Officer President was in navigable airspace where he was able to take pictures with a commercially available camera using a zoom lens that he later used to identify marijuana on Mr. Soogrim's property, that Mr. Soogrim's Fourth Amendment rights have not been violated. This argument ignores several salient factors.

First, the government concludes with little to no discussion, that Mr. Soogrim did not have a subjective expectation of privacy in the curtilage of his property. Contrary to the government assertion, Mr. Soogrim was not growing marijuana in "an open field" . . . "with no attempts made to hide or conceal anything." [ECF No. 66, p. 12] The area where the marijuana was observed, was immediately adjacent to the south side of Mr.

Soogrim's house and not in an open field. Exhibit A, p. 15, 43. The area, clearly within the curtilage of Mr. Soogrim's house, was also camouflaged by bush and unable to be observed from ground level. While Officer President may have been able to view what he suspected were marijuana plants after taking pictures with a camera that utilized a zoom lens, the representation that no attempt was made to hide or conceal is a misrepresentation of the facts.

The government ignores the fact that a resident retains a reasonable expectation of privacy in "the land immediately surrounding and associated with the home." *California v. Ciraolo,* 476 U.S. 270, 212-13 (1986). While Mr. Soogrim's property may not have all of the characteristics that the government chooses to highlight from *United States v. Somme,* 1:19-cr-18-WAL, 2022 WL 4365856 (D.V.I. Sept. 20, 2022), Mr. Soogrim demonstrated his expectation of privacy. His home is fenced, gated, and surrounded by tall bush and he lives on a dead-end road. *See* Gov. Exhibit 2 &3, Exhibit A, p. 16, 25, 55, 103-04. President was not able to see any plants on foot from a ground view perspective. The fact that the plants were not protected from aerial view does not negate Mr. Soogrim's subjective expectation of privacy.

The government chooses to focus on the fact that TFO President was in navigable airspace. However, that fact alone does not determine whether the government conducted an illegal search of Mr. Soogrim's property. To the contrary, the Supreme Court warned, "This is not to say that an inspection of the curtilage of a house from aircraft will always pass muster under the Fourth Amendment simply because the plane is within the navigable airspace specified by law." *Florida v. Riley,* 488 U.S. 445, 451

(1989). The Supreme Court recognized that modern technology had the capability of intruding on the Fourth Amendment protections afforded to the citizenry in their homes. *Id.* TFO President's use of the camera with the zoom lens was an intrusion on Mr. Soogrim's Fourth Amendment right to privacy. While case law establishes that aerial surveillance with the naked eye *may be* permissible from navigable airspace, it does not necessarily follow that such surveillance is permissible with the use of image enhancing equipment.

### III. Santos Violated Mr. Soogrim's Constitutional Rights by Failing to Give A Proper *Miranda* Warning

On February 7, 2022, Mr. Soogrim was in custody when he was questioned by Sgt. Santos. As represented by the government, he was not handcuffed, frisked or told that he could not leave. However, he was ordered out of his home shortly after 6:00 in the early morning hours to find his home and property surrounded by ten to fifteen armed law enforcement agents in bullet proof vests, five to seven of which had handguns or rifles unholstered and drawn. He was not permitted to go back into his home but stood outside as he was presented with the search warrant and questioned by Sgt. Santos. He was not told that he was free to leave. In fact, after he answered Sgt. Santos questions, he was arrested, handcuffed, taken to a police car and transported for processing. Given these circumstances, a reasonable person would not have felt that he was at liberty to leave.

While *Miranda* does not require a magical incantation of words, it does require

that a suspect be informed of his rights. The government focuses on the fact that Mr. Soogrim was told he did not have to answer questions. This is only one of the requirements of *Miranda*. What the government fails to address is that Mr. Soogrim was never advised that he was entitled to counsel nor was he told that anything he said could be used against him in a court of law. Mr. Soogrim was not properly advised of his rights under *Miranda* and his statement should be suppressed.

**WHEREFORE**, Mr. Soogrim requests that this Court enter an order granting his motion to suppress.

Dated: January 9, 2023

Respectfully submitted,

*/s/ Lisa L. Brown Williams*
Lisa L. Brown Williams
Asst. Federal Public Defender
4094 Estate Diamond Ruby, Suite 5
Christiansted, VI 00820
Tel (340)773-3585
Fax (340)773-3742
E-mail: lisa_brown@fd.org